**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SKILLNET SOLUTIONS, INC.,

                                                            CASE NO.  12-12173
      Plaintiff,                                   HON. LAWRENCE P. ZATKOFF

v.

ENTERTAINMENT PUBLICATIONS, LLC,

      Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on December 5, 2012.

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
                      UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Plaintiff's Motion to Dismiss Counts II–V of Defendant's Counterclaim [dkt 21]. The parties have fully briefed the Motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument or additional briefing. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted. For the reasons set forth below, Plaintiff's Motion to Dismiss is GRANTED in part and DENIED in part.

**II. FACTUAL BACKGROUND**

Plaintiff is an information technology ("IT") company[1] that provides its customers with

---

[1] Plaintiff is considered a leading provider of IT consulting services and software solutions.

e-commerce business consulting and software development services. Defendant is a discount and promotions company[2] that, among other things, utilizes the internet to give consumers access to printable coupons for dining, attractions, services, travel, retail, and entertainment. This case arises out of their business relationship.

Plaintiff alleges that in the summer of 2010, Defendant contacted Plaintiff about replacing its then current e-commerce system.[3] Subsequent to these discussions, the parties agreed that Defendant would permit Plaintiff to assess Defendant's current system to evaluate the services Plaintiff could offer. Based on this, Defendant sent Plaintiff a purchase order[4] ("PO contract 3456") for $85,000.00, requesting Plaintiff to perform initial evaluations of Defendant's system. Pursuant to PO contract 3456, Plaintiff began the assessment of Defendant's system in June and July 2010. During that process, on July 22, 2010, the parties executed a written contract identified as the "Services Agreement."[5]

The Services Agreement[6] set forth the terms of the relationship between Plaintiff and

---

[2] Defendant is the leading provider of discount and promotion products in North America. Defendant is arguably most recognized for producing its Entertainment Coupon Book®.

[3] An "e-commerce system" is a comprehensive computer system that allows sellers and consumers to sell and buy a product or service over electronic systems such as the internet.

[4] The Court notes that the two purchase orders sent by Defendant to Plaintiff are unsigned. Neither party, however, disputes the validity of the two purchase orders.

[5] The Services Agreement generally describes the contractual relationship between the parties. It states that the parties will later execute a document known as a Statement of Work, which will detail with greater specificity the services Plaintiff was to provide, the delivery dates, time and place of performance, rates, and any other information agreed to between the parties. After a Statement of Work was executed, the provisions of the Services Agreement would be deemed incorporated into the Statement of Work.

[6] The Services Agreement also notes that any prior purchase orders entered into between the parties are governed by the terms and conditions set forth in the Services Agreement.

Defendant, leaving out additional matters to be addressed by a later executed Statement of Work[7] ("SOW"). Simply put, Plaintiff was to provide IT services to Defendant to facilitate the development of a new e-commerce system which Defendant was to utilize to revamp its internet business. Pursuant to the terms of the Services Agreement, Plaintiff was to use a particular software program— called the Endeca and Hybris Software[8]—when performing the agreed upon services for Defendant.

On August 24, 2010, before the parties entered into a SOW, Defendant issued another purchase order ("PO contract 3961") outlining additional work that needed to be completed. This PO contract was for a total of $300,000.00. According to Plaintiff, Defendant issued no additional purchase orders. Plaintiff continued to work and provide services to Defendant throughout the Fall of 2010, based on representations that Defendant purportedly made to Plaintiff in regards to entering into a SOW.

On December 2, 2010, the parties executed a SOW. Pursuant to the SOW, Plaintiff was to provide software consultants to assist in the development of Defendant's e-commerce system. The SOW set forth the services Plaintiff was to provide, including a summary of the project, how the project would progress, expected costs, staffing, hourly personnel rates, and party responsibilities. The Services Agreement, PO contracts 3456 and 3961, and the SOW are collectively referred to as the "Contract."

After execution of the SOW, however, Plaintiff alleges that Defendant's needs and requirements exceeded the terms of the SOW. On or about April 27 and April 28, 2011, the parties

---

[7] *See supra* note 5.

[8] Endeca-Hybris Software will be hereinafter referred to as "Hybris software".

3

reached an agreement regarding a new project model (*i.e.*, new e-commerce system), staffing changes, and the payment of certain outstanding invoices and "holdback amounts" under the Services Agreement. This agreement was confirmed in an e-mail on May 3, 2011.

In June 2011, Defendant neither paid Plaintiff certain outstanding invoices the parties agreed to in the May 3, 2011 email, nor paid Plaintiff for services performed since that time. On July 21, 2011, Defendant purportedly terminated the Contract for cause and "convenience." In total, Plaintiff allegedly billed Defendant $4,343,855.79, of which $2,484,458.10 remains outstanding.

## III. PROCEDURAL BACKGROUND

Plaintiff originally filed this case in a California state court on August 29, 2011, but based on federal diversity jurisdiction, Defendant removed the case to the United States District Court for the Northern District of California (Case No. CV11-04865-PSG). Defendant then filed a motion to transfer venue to this Court, which was granted by the California district court based on the applicability of the forum selection clause in the parties' Contract. The case was transferred to this Court on May 16, 2012, after which Plaintiff filed an amended Complaint.

Defendant filed an Answer and Counterclaim.[9] The Counterclaim asserts causes of action for breach of contract (Count I), constructive fraud in the inducement (Count II), silent fraud in the inducement (Count III), account stated (Count IV), and unjust enrichment (Count V). On July 24, 2012, Plaintiff filed the instant Motion, seeking the dismissal of all but Count I of the Counterclaim pursuant to Fed. R. Civ. P. 12(b)(6).

## IV. STANDARD OF REVIEW

---

[9]Defendant filed an Amended Counterclaim on August 14, 2012, which details with greater specificity the facts involving the alleged fraud claims. (Docket # 22).

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of a party's claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in that party's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). A party must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the party pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct." *Id.* at 556. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 696–97 (2009).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000).

## V. ANALYSIS

Plaintiff sets forth a barrage of attacks on Defendant's Counterclaim, arguing that:

> (1) Defendant's fraud claims fail to comply with Federal Rule of Civil Procedure 9, are not recognized under Michigan law, are barred by the contract's integration clause, and are barred by the elections of remedies doctrine;
>
> (2) Defendant's account stated claim is facially invalid insofar as Defendant cannot establish an "account" to sue upon, or, in the

5

> alternative, that Defendant's purported setoff claim will fail because Defendant did not reduce its alleged cost incurred from Plaintiff's alleged breach into a liquidated debt; and
>
> (3) Defendant's unjust enrichment claim fails based on the presence of an express contract between the parties.

## A. COUNTS II AND III–FRAUD

Defendant asserts two fraud claims in its Counterclaim—constructive fraud in the inducement (Count II) and silent fraud in the inducement (Count III). Both claims originate from Defendant's allegation that Plaintiff falsely represented that it had expertise in the Hybris software. Because Defendant's silent fraud claim is merely a slightly altered version of the fraudulent inducement claim, the Court considers these claims as one cause of action, *i.e.*, fraud in the inducement. *See Safety Socket, LLC, v. All State Fastener*, No. 07-CV-15364, 2009 WL 1508377, at *9 (E.D. Mich. May 29, 2009).

As a general rule, actionable fraud consists of the following elements: (1) that defendant made a material misrepresentation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976). "Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to recovery." *Id*.

Michigan courts recognize fraudulent inducement to enter a contract when "a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Samuel D. Begola Servs. v. Wild Bros.*, 210

Mich.App. 636, 639 (1995). Fraud in the inducement renders the contract voidable at the election of the defrauded party. *Id*. at 640.

### 1. Federal Rule of Civil Procedure 9(b)

As a threshold matter, the Court must consider Plaintiff's contention that Defendant's fraud claim fails to comply with Fed. R. Civ. P. 9. In all averments of fraud, the circumstances constituting fraud must be stated with particularity. Fed. R. Civ. P. 9(b). The Sixth Circuit has further interpreted this rule to require a plaintiff to: "(1) specify the statements that plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569–70 (6th Cir. 2008) (citations omitted). Complaints that fail to conform to the pleading requirements of Rule 9(b) are subject to dismissal. *Id*.

After reviewing Defendant's fraud claim, the Court concludes that Defendant's allegations are sufficiently pled to satisfy the heightened pleading standards under Fed. R. Civ. P. 9(b). First, Defendant alleges as part of its fraudulent inducement claim that Plaintiff represented that it had expertise in the Hybris software such that Defendant was induced into entering the Contract. Second, Defendant alleges that "members of [Plaintiff's] project team, including but not limited to Praveen Pahwa" made those representations between "June 1 and June 28, 2010". *See* Dkt. # 22, at p.22.

Third, Defendant maintains that the alleged fraudulent representations occurred during "telephonic conversations and face-to-face meetings in Troy, Michigan." *Id.*. And last, Defendant argues that Plaintiff's representations were fraudulent because Plaintiff knowingly made statements regarding its expertise in the Hybris software despite its lack of use and/or familiarity with that

7

software. Contrary to Plaintiff's arguments, Defendant has adequately alleged specific statements claimed to be fraudulent, the identity of the speaker(s) of the statements, where and when the statements occurred, and its rationale as to why the statements constituted fraud. *See Dana Corp.*, 547 F.3d at 569–70.

### 2. Fraud Claims in Connection with an Alleged Breach of Contract under Michigan law

Having found that Defendant satisfied Fed. R. Civ. P. 9(b)'s particularity requirement, the Court turns to Plaintiff's contention that Defendant's fraud claim is not cognizable under Michigan law. Plaintiff alleges that Defendant cannot maintain the fraud claim because the alleged misrepresentations are indistinguishable from the terms of the parties' Contract and are therefore barred by the economic loss doctrine. Thus, according to Plaintiff, Defendant has alleged no duty separate and distinct from the contract, as required pursuant to Michigan law.

The economic lost doctrine arose as a means of separating actions arising in tort from those arising in contract. Simply stated, the economic loss doctrine provides that where a plaintiff's damages are purely economic in nature, the plaintiff cannot maintain a tort claim based on the breach of contract facts. *See Neibarger v. Universal Coops., Inc.*, 439 Mich. 512, 520 (1992). Michigan courts, however, recognize an exception to that doctrine for fraud in the inducement. *See, e.g.*, *Huron Tools & Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365, 368 (1995). Accordingly, Plaintiff's argument that Defendant's fraud claim is foreclosed by the economic loss doctrine contravenes well-settled Michigan law and, therefore, lacks merit.

### 3. The Merger/Integration Clauses of the Contract

Plaintiff next asks this Court to summarily dismiss Defendant's fraud claim because the parties' Contract contained merger clauses. As a result of the clauses, Plaintiff argues, Defendant

should be barred from presenting evidence of oral representations verbalized during negotiations leading up to the execution of the Contract. Alternatively, Plaintiff argues that Defendant's reliance on the alleged false representations was not reasonable, or justifiable, based on the inclusion of the merger clauses in the Contract.

The Michigan Court of Appeals has addressed the interplay between parol evidence and merger clauses as follows:

> [W]hile parol evidence is generally admissible to prove fraud, fraud that relates solely to an oral agreement that was nullified by a valid merger clause would have no effect on the validity of the contract. Thus, when a contract contains a valid merger clause, the only fraud that could vitiate the contract is fraud that would invalidate the merger clause itself, i.e. fraud relating to the merger clause or fraud that invalidates the entire contract including the merger clause.

*UAW-GM Human Res. Ctr. v. KSL Recreation Corp.*, 228 Mich.App. 486, 502 (1998) (internal citations omitted).

Recently, the Sixth Circuit also examined this issue and explained:

> The key question regarding contracts that contain merger clauses is whether one party justifiably [or reasonably] relied on the representations of the other where the written agreement not only failed to include those representations, but clearly stated that by signing the contract the parties were agreeing that the written document made up their entire agreement. Moreover, [t]here is an important distinction between (a) representations of fact made by one party to another to induce that party to enter into a contract, and (b) collateral agreements or understandings between two parties that are not expressed in a written contract. It is only the latter that are eviscerated by a merger clause, even if such were the product of misrepresentation. It stretches the [*UAW*] ruling too far to say that any pre-contractual factual misrepresentations made by a party to a contract are wiped away by simply including a merger clause in the final contract.

9

*LIAC, Inc. v. Founders Ins. Co.*, 222 Fed. App'x. 488, 493 (6th Cir. 2007) (internal citations omitted).

As provided above, Michigan does not recognize a firm rule such that the existence of a merger clause in a contract precludes admission of any and all evidence of alleged fraudulent representations. In other words, it is clear under Michigan jurisprudence that merger clauses do not automatically eviscerate a party's claim that it was fraudulently induced into entering a contract. Thus, Defendant's claim of fraudulent inducement is not barred solely because the parties' Contract contains merger clauses. That claim will be barred, however, if Defendant cannot prove that it reasonably, or "justifiably," relied on the alleged misrepresentations as inducement for entering into the Contract with Plaintiff.

The Sixth Circuit has addressed the argument that reasonable reliance on representations made prior to contract execution is undermined if such a contract contains a merger or integration clause. *See Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 568 (6th Cir. 2003) (concluding that "there is no rule that a merger clause makes reliance on oral representations unreasonable *per se* so as to necessarily defeat a fraudulent inducement . . . claim") (applying Tennessee law). Additionally, other courts in this Circuit have confronted this issue. *See, e.g.*, *Whitesell Corp. v. Whirlpool Corp.*, No. 1:05-CV-679, 2009 WL 3270265, at *3 (W.D. Mich. October 5, 2009) (holding that the existence of the merger clause did not bar evidence of the defendant's pre-contractual misrepresentations or make the plaintiff's reliance on these misrepresentations unreasonable). Michigan courts, likewise, have not adopted a *per se* rule making reliance on prior statements unreasonable after a contract containing a merger clause is signed. Rather, though the Supreme Court of Michigan has observed that "an integration clause nullifies all antecedent

agreements," *Archambo v. Lawyers Title Ins. Corp.*, 466 Mich. 402, 413 (2002) (citation omitted), the Court clearly instructed that this rule is "[s]ubject . . . to evidence of certain kinds of fraud (or other grounds sufficient to set aside a contract) . . . ." *Id.* at 414 n. 15 (internal quotes and citations omitted).

Despite Michigan's refusal to establish a *per se* rule in these situations, its state courts, and courts in this Circuit applying Michigan law, have failed to find reasonable reliance on alleged misrepresentations where those oral statements would conflict with the explicit terms of a contract that contains a merger clause. *See, e.g.*, *Hamade v. Sunoco, Inc. (R & M)*, 271 Mich. App. 145, 171 (2006) ("Furthermore, because the valid integration clause nullified all prior and contemporaneous agreements, understandings, representations, and warranties, plaintiff may not use parol evidence to contradict the explicit terms of the integration clause."); *see also Cook v. Little Caesar Enter., Inc.*, 210 F.3d 653, 656–58 (6th Cir. 2000) (holding that plaintiff's "bare allegation" that he was promised a specific territory for his franchises did not constitute fraudulent inducement because the "plain language" of the franchise agreements, which contained merger clauses, "specifically provide[d] otherwise"); *Safety Socket, LLC, v. All State Fastener*, No. 07-CV-15364, 2009 WL 1508377, at *12 (E.D. Mich. May 29, 2009) ("[T]he Court finds that no genuine issues of material fact exist as to whether Plaintiff was fraudulently induced into entering a contract with Defendant, because Plaintiff's claims are contradicted through the various provisions of the Terms and Conditions Agreement.").

Here, the parties' Services Agreement and PO contracts 3456 and 3961 contained merger clauses,[10] which provided:

> Agreement and Term. [Defendant] and [Plaintiff] agree that the terms and conditions of this Agreement apply to the provision of Services (as later defined) to [Defendant] by [Plaintiff]. The term of this Agreement commences on the Effective Date and the Agreement shall continue to be in effect until terminated by either party as set forth in this Agreement. Upon the effective date of this Agreement, the Purchase Order(s) (even those issued prior to the effective date of this Agreement) shall be governed by the terms of this Agreement.

*See* Dkt. # 11, Ex. B, at p.1.

> Entire Agreement. This Agreement constitutes the entire and exclusive statement of the agreement between the parties with respect to its subject matter and there are no oral or written representations, understandings, or agreements relating to this Agreement which are not fully expressed in the Agreement. This Agreement shall not be amended except by a written agreement signed by both parties. All exhibits, documents, and schedules referenced in this Agreement or attached to this Agreement, and each Purchase Order are an integral part of this Agreement. In the event of any conflict between the terms and conditions of this Agreement and any such exhibits, documents, or schedules, the terms of this Agreement shall be controlling unless otherwise stated or agreed. In the event of a conflict between terms and conditions of this Agreement and a Purchase Order, the Purchase Order shall be controlling with respect to those transactions covered by that Purchase Order. Any other terms or conditions included in any shrink wrap license agreements, quotes, invoices, acknowledgments, bills of lading, or other forms utilized or exchanged by the parties shall not be incorporated in this Agreement or be binding upon the parties unless the parties expressly agree in writing or unless otherwise provided for in this Agreement.

*Id.* at p. 19.

---

[10] The Courts notes that the SOW, standing alone, does not contain a merger clause. As previously indicated however, the terms and provisions of the Services Agreement—which include a merger clause—are deemed incorporated into the SOW.

> Entire Agreement. The parties agree that this PO Contract, and any agreement specifically incorporated herein by reference, constitutes the entire agreement between the parties with respect to the subject matter hereof and merges all prior and contemporaneous communications. No PO Contract is valid or binding unless signed by an authorized representative of [Defendant]. Amendments are nonbinding unless reduced to writing and signed by duly authorized representatives of both [Defendant] and [Plaintiff].

*Id.*, Ex.'s A and C, at p. 5.

Notwithstanding the existence of the above-mentioned merger clauses, Defendant contends Plaintiff's misrepresentations regarding its expertise in the Hybris software constituted fraud and induced Defendant to enter into the Contract. Specifically, Defendant alleges, "[Plaintiff's] representation was material in that [Defendant] would not have entered into the Contract with a value in excess of $4 million had [Defendant] known that the extent of [Plaintiff's] expertise with Hybris was that a handful of its employees had attended a one-day training." *See* Dkt. # 22, at p. 23. To underpin its argument that its reliance on the alleged representations was reasonable, Defendant directs the Court to the following combination of terms from the Services Agreement: "WHEREAS [Plaintiff] has skills, experience and expertise in providing IT services for its corporate clients; and WHEREAS [Plaintiff] desires to provide its skills, experience and expertise to [Defendant] for IT services related to the Endeca-Hybris Software solution for the EP1 project . . . ." *See id.*, Ex. 2, at p. 1. Defendant claims that those terms equate to language sufficient to warrant its reliance on Plaintiff's alleged misrepresentations. The Court disagrees.

The instant case is commensurate to Michigan case law precluding a party from reasonably or justifiably relying on alleged misrepresentations that contradict the terms of a contract containing a merger clause. After reviewing the plain language of the Services Agreement, the Court is unpersuaded that Defendant's reliance was in fact reasonable. The agreement is completely devoid

of any indication that Plaintiff had, or was required to have, "expertise" in the Hybris software. Plaintiff's duty under the agreement was to provide "*its* skills, experience and expertise [in] IT services related to the Endeca-Hybris software." *Id*. (emphasis added). According to the unambiguous terms of the agreement, Plaintiff was under no obligation to possess expertise regarding the Hybris software; rather, Plaintiff was required to provide its expertise in IT services, generally.

Additionally, interpreting the above language of the agreement as Defendant desires is unfounded. The Court is "not concerned with [Defendant's] subjective mental state" because "the intent of the parties is clearly evidenced by the explicit language of the Contract." *See Lavdas v. Burger King Corp.*, No. 05-72818, 2005 WL 3434797, at *4 (E.D. Mich Dec. 14, 2005). As such, the Court will not permit Defendant "to substitute [its] subjective belief of the agreement with the actual language and representations contained in the Contract." *See id*.

Adopting Defendant's position would essentially require the Court to re-draft a portion of the parties' Contract. Defendant is a sophisticated business entity and cannot now complain that Plaintiff fraudulently induced it to enter into the Contract with Plaintiff—thereby voiding the entire agreement—when the agreement contained provisions that contradict the alleged misrepresentations made by Plaintiff. If Defendant wanted to include a statement concerning a necessity of expertise in the Hybris software, then it should have addressed this issue before signing the Contract, which contained unambiguous merger clauses. Accordingly, Defendant's fraud claim is dismissed.

**5. Election of Remedies**

Plaintiff also argues that Defendant's fraud claim is barred by the election of remedies doctrine. This argument is moot because the Court has already concluded that, based on the plain language of the Services Agreement, Defendant's fraud claim must fail. It is therefore unnecessary for the Court to address the applicability of the election of remedies doctrine to the instant case.

### B. COUNT IV–ACCOUNT STATED-SETOFF

Plaintiff next argues that Count IV of Defendant's Counterclaim, Account Stated-Setoff, should be dismissed because Defendant has failed to establish the existence of any account owed by Plaintiff to Defendant. Plaintiff also argues that, even if Defendant's claim could be interpreted as a claim for setoff, Defendant did not reduce its alleged cost incurred from Plaintiff's alleged breach into an account. Reviewing the Counterclaim in a light most favorable to Defendant, the Court will address Count IV as a setoff claim.

"The right to setoff is a widely recognized common law right which allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Gordon Sel-Way, Inc. v. United States*, 270 F.3d 280, 290 (6th Cir. 2001) (quoting *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995)). The law in Michigan regarding setoff was explained in *Siciliano v. Mueller*, No. 222258, 2001 WL 1699801 (Mich. Ct. App. Dec. 28, 2001). The court stated:

> Setoff is a legal or equitable remedy that may occur when two entities that owe money to each other apply their mutual debts against each other. Generally, the setoff and the action must be between the same parties and in the same capacity or right, and the court can look through the transactions and nominal parties to determine the real parties in interest. A setoff requires a mutuality of debt between the same real parties in interest, where the demands of the mutually indebted parties are set off against each other and only the balance

> recovered. However, setoff rests on opposing claims that are enforceable in their own right. A claim for set off need not arise out of the same transaction as that sued on. If the parties are mutually indebted, there may be a setoff regardless of whether the debt arises out of the same contract or transaction.

*Id.* at *6 (internal quotations and citations omitted).

At this stage of the proceeding, whether either party will have "opposing claims that are enforceable in their own right" is simply unknown as the matter is pending and no resolution, judicial or otherwise, has been reached. Plaintiff's contention that setoff may be used offensively to dismiss this claim prior to adjudication on the merits is misplaced. *See* Am. Jur. 2d, Counterclaim, Recoupment, and Setoff § 6 ("The right to setoff does not operate as a denial of the plaintiff's claim but allows the defendant to set off the debt that the plaintiff owes the defendant against the plaintiff's claim against the defendant."). The Court, therefore, rejects Plaintiff's argument that Defendant's setoff claim should be dismissed at this point in the proceeding.

## C. COUNT V–UNJUST ENRICHMENT

In Count V, Defendant asserts an unjust enrichment claim. An unjust enrichment claim provides a party a remedy by implying a contract where no express contract governs the subject matter. *Belle Isle Grill Corp v. City of Detroit*, 256 Mich. App. 463, 478 (2003). Defendant's claim must fail since an express agreement governs the parties' relationship. The parties' rights and obligations are governed by the Contract. Defendant must recover, if at all, under the terms of that Contract. As such, Defendant's unjust enrichment claim fails as a matter of law.

## VI. CONCLUSION

Accordingly, for the above reasons, IT IS HEREBY ORDERED that Plaintiff's Motion to Dismiss [dkt 21]  is GRANTED in part and DENIED in part;

To the extent that Plaintiff's Motion is granted, Counts II, III and V of Defendant's Counterclaim are dismissed;

To the extent that Plaintiff's Motion is denied, the Court retains jurisdiction over Count IV of Defendant's Counterclaim.

IT IS SO ORDERED.

                                                  S/Lawrence P. Zatkoff
                                                  HON. LAWRENCE P. ZATKOFF
                                                  U.S. DISTRICT COURT JUDGE

Dated: December 5, 2012